GANDÍA, DEMANDANTE Y APELANTE, *v.* PORTO RICO FERTILIZER
CO., DEMANDADA Y APELADA.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre cobro de dividendos y prevención de traspasos.

No. 2046.—Resuelto en junio 1, 1920.

NON SUIT.—En Puerto Rico, como en California, al resolver una moción de *non suit* la corte está obligada a considerar meramente si la prueba del demandante establece un caso *prima facie.*

ID.—DECISIONES EXCEPCIONADAS POR MINISTERIO DE LA LEY.—Una sentencia de *non suit* es una decisión definitiva a los efectos del artículo 213 del Código de Enjuiciamiento Civil, por lo cual no tiene que ser excepcionada para que pueda apelarse de ella, pues se considera excepcionada por ministerio de la ley.

PRUEBA.—Aunque para probar los hechos controvertidos se requiere la mejor prueba, esta regla se refiere a que mientras pueda obtenerse la prueba ori-

ginal no será admisible prueba substituta, pero no se infringe porque la parte elija prueba equivalente o la prueba más débil cuando pudo haber obtenido la más fuerte o porque deje de presentar toda la prueba a su alcance.

PRUEBA—PRESUNCIÓN DE CONTINUIDAD.—Prueba de ser dueño de acciones en época anterior permite la aplicación de la regla de continuidad de dominio como establece el artículo 102, apartado 31 de la Ley de Evidencia.

ID.—PRUEBA SIN OBJECIÓN.—Cualquier prueba lógica es admisible cuando no es objetada.

ESTOPPEL.—Una persona no está impedida (*estopped*) de reclamar contra otra, debido a manifestaciones casuales o incidentales hechas en sus actos o contratos o aun en pleitos con terceras personas, a menos que sus manifestaciones o sus actos hubieran perjudicado a dicha persona.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. J. de Guzmán Benítez.*

Abogados de la apelada: *Sres. C. Coll Cuchí* y *G. Cruzado Silva.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

La "Porto Rico Fertilizer Company" es la demandada en este caso. Cuando la corporación fué originalmente incorporada, las acciones estaban divididas en la forma siguiente: 250 acciones de la "Virginia Carolina Chemical Company" de Richmond, Virginia; 125 acciones pertenecientes a la mercantil "Gandía y Stubbe"; 60 acciones según constaban de las cláusulas de incorporación pertenecían a Stubbe y 60 al demandante Pedro Gandía; 3 a Federico Stubbe y 2 a Hector Cesteros. En la demanda se hace cierta referencia al primer reparto de dividendos declarado pero en el juicio se demostró que las partes se referían al segundo dividendo. Sostiene el demandante que de este segundo dividendo, $8,234.06 correspondió al demandante Gandía por sus 60 acciones y que el efectivo quedó en las cajas de la corporación.

Poco tiempo después de la declaración de estos dividendos, en julio 24 de 1916, quedó disuelta la sociedad "Gandía y Stubbe." Se redactaron cláusulas de disolución, la interpretación de las cuales es una de las cuestiones principales en controversia en este pleito. La otra cuestión de importancia es la de la pertenencia de los $8,234.06.

Se alega en la contestación de la demandada que aunque en las cláusulas de incorporación las 60 acciones aparecían como pertenecientes a Gandía, que dichas 60 acciones y las otras 60 pertenecientes a Stubbe en realidad de verdad eran propiedad de la firma de "Gandía y Stubbe;" que de las 500 acciones de la "Porto Rico Fertilizer Company" 250 pertenecían a los directores de la "Virginia Carolina Chemical Company" y 250 a "Gandía y Stubbe," y la corporación demandada alega también que los $8,234.06 reclamados por Gandía, así como los $8,234.06 que aparecen abonados a Stubbe, eran dividendos no de las 120 acciones que se alegan como pertenecientes individualmente a Gandía y a Stubbe, sino sobre todas las 250 acciones de "Gandía y Stubbe," y dice también la corporación que al recibir aviso de que Gandía había vendido sus acciones a Stubbe, pagó esta la totalidad de la suma de $16,250 a Stubbe.

Se celebró el juicio del caso y a moción de la demandada la corte dictó sentencia de *non suit* a su favor. La corte después de resumir algunos de los anteriores hechos y considerar la naturaleza de la moción de *non suit* en la que todos los hechos expresados por el demandante deben ser tenidos por ciertos, declaró probado que el demandante Gandía no había probado su derecho a las sesenta acciones. La corte declaró probado que la prueba del hecho de que Gandía fuese el dueño de las sesenta acciones en la fecha de la incorporación de la compañía no es prueba de que fuera hoy el dueño y que la mejor, más adecuada y competente prueba en el caso eran los libros de la compañía. También declaró probado la corte que en las cláusulas de disolución se asignaba individualmente a Gandía y a Stubbe la suma de $8,234.06 pero que en cambio toda esta suma de $16,468.12 se consignaba como activo de "Gandía y Stubbe" y que por tanto el demandante no estaba en condición de ir contra los hechos de tal modo consignados en dichas cláusulas.

Sostiene la apelada que la corte inferior al considerar una moción de *non suit* no está obligada como en California a considerar meramente el hecho de si hay prueba tendente a establecer un caso *prima facie,* pero según entendemos a la apelada, la corte puede considerar toda la prueba y dirimir cualquier conflicto que pueda surgir. El artículo 192 del Código de Enjuiciamiento Civil prescribe que se podrá desistir de una demanda o declararse abandonada en los casos siguientes: (5) Por la corte, a moción del demandado, cuando en el juicio no presentare el demandante prueba suficiente para fundarse sobre ésta una sentencia.

El precepto legal correspondiente en California era:

"(5) Por la corte a moción del demandado cuando en el juicio el demandante deja de probar un caso suficiente para el Jurado."

La diferencia entre estos dos artículos, sostenemos que es precisamente el hecho de que en Puerto Rico no hay jurado en casos civiles en las cortes insulares. De otro modo los principios que regulan los *non suits* permanecen inalterables y así hemos aplicado dichos principios en el caso de *Vargas v. Monroig,* 15 D. P. R. 27, y de *Méndez v. Banco Comercial,* 26 D. P. R. 647. También hicimos aplicación de la regla en los casos criminales en que la corte había dictado sentencia de *non suit* a favor de los acusados.

Aun cuando la apelada tuviera razón en su alegación es evidente que la corte inferior no estaba considerando el peso de la prueba sino solamente si ésta era suficiente. También es evidente que una corte no debe estar obligada a considerar dos veces la credibilidad de los testigos. La idea de la palabra *"non suit"* significa que el demandante no ha probado un caso *prima facie.* Podemos decir de paso que la conclusión final a que hemos llegado tendría lugar ya que la corte estuviera considerando la cuestión de la existencia de un caso *prima facie* o ya sobre los méritos del caso como le fué sometido.

La apelada alegó también que la resolución sobre una moción de *non suit* debe ser excepcionada. Esta no ha sido la práctica en esta jurisdicción. El artículo 192 del Código de Enjuiciamiento Civil prescribe que se podrá dictar sentencia de *non suit,* etc., y el artículo 213 prescribe que la decisión definitiva y acción * * * se considerarán excepcionadas. Una sentencia de *non suit* es tal decisión definitiva.

La corte cometió error al resolver que Gandía no había probado *prima facie* su derecho a las sesenta acciones. No solo lo declaró él así sino que las cláusulas de incorporación muestran que era el dueño de las referidas sesenta acciones y una vez probado su derecho la presunción de continuar en él existe como se determina en el artículo 102, de la Ley de Evidencia y según ha sido resuelto por nosotros en el caso de *Fulladosa* v. *Castro,* sentencia de julio 18 de 1919, y casos citados en la misma.

La corte estaba bajo la errónea impresión de que la regla de la mejor evidencia era aplicable a la prueba del dominio en estos casos. En el tomo 17 de Cyc., página 505, se dice lo siguiente:

"Cuando la ley exige que se lleve un registro de los actos y procedimientos de una corporación particular, tal registro constituye la mejor prueba de su contenido y no es admisible la prueba testifical de poder obtenerse el registro. Sin embargo, la precedente regla no es de un alcance ilimitado; los hechos independientes de los cuales un testigo tiene conocimiento personal pueden ser probados por su declaración, no obstante el que puedan ellos aparecer también en el registro de la corporación."

Y en el tomo 10 de Ruling Case Law, página 903 se sienta la regla en la siguiente forma:

"La mejor prueba que pueda obtenerse debe ser presentada para probar cada hecho controvertido, y el dejar de hacerlo y tratar en cambio de sostener la cuestión por prueba secundaria permitirá la inferencia de que la parte no presenta la mejor prueba porque ella tendería a destruir en vez de sostener la cuestión por su parte. Al exigirse la presentación de la mejor prueba aplicable a cada hecho

en particular, quiere decirse que no se recibirá ninguna prueba que sea meramente de carácter sustituto mientras la prueba original pueda ser obtenida. La regla excluye solamente aquella prueba que en sí indica la existencia de más fuentes primitivas de información; pero cuando no hay prueba sustituta sino solamente la elección de pruebas más débiles en vez de más fuertes, o una omisión en presentar todas las pruebas que puedan obtenerse, no se infringe la regla. El jefe de una penitenciaría tal vez podría suministrar la prueba más robusta de que una persona en determinada fecha había cumplido condena en la penitenciaría puesto que él lleva un registro en el que anota la fecha exacta en que entran y salen los presos pero el hecho puede ·acreditarse por cualquiera otra prueba competente.''

Como en el ejemplo citado del jefe de la penitenciaría, un libro de acciones de una corporación podría constituir alguna prueba del dominio de las acciones, pero no sería la única prueba y esto es manifiesto si no por alguna otra razón por el hecho de que las acciones que pueden transferirse libremente con frecuencia no se llevan a los libros de la corporación en absoluto después que han sido traspasadas. El dominio de las acciones es un hecho que generalmente es anterior al registro por el empleado o secretario en el libro de acciones de la corporación. La presentación de las acciones tal vez sería la mejor prueba pero aquí se admite que Gandía no estaba en posesión de las acciones y las cláusulas de disolución y toda la prueba muestran que Gandía renunció a cualquier reclamación sobre las acciones de la corporación.

No solamente es cierto lo anterior, sino que se permitió a Gandía presentar las cláusulas de incorporación donde consta su derecho de propiedad sin objeción de ninguna clase y manifestó asimismo que él poseía las acciones en cierta época, también sin objeción. Frecuentemente se ha resuelto que cualquier hecho probatorio es admisible como prueba hasta que se formule la debida objeción. De modo pues, que era claro que hubo prueba tendente a mostrar que Gandía era el dueño de las 60 acciones.

Las cláusulas de disolución se refieren varias veces a un traspaso hecho por Gandía a Stubbe de sus acciones en la compañía, dando así color a la reclamación de Gandía de que era él el dueño de las referidas 60 acciones.

También está la corte equivocada cuando trata de aplicar una regla de *estoppel* contra Gandía porque los $16,468.12 declarados como dividendos fueron puestos en el activo de "Gandía y Stubbe." Por lo menos *prima facie* Gandía explica esto muy bien o sea que como él y Stubbe eran socios iguales él tenía derecho a la mitad de cualquier cosa que fuese declarada y probablemente no le importaba que en la declaración del activo se pusieran estos diez y seis mil pesos como pertenecientes a la sociedad más bien que a Gandía y Stubbe individualmente. Sin embargo, en oposición a esta conclusión de la corte las cláusulas de disolución dan específicamente a Gandía un crédito de $8,234.06 por dividendos declarados en la "Porto Rico Fertilizer Company" y declara él que esta suma nunca le fué satisfecha. Las cláusulas de disolución tienden así a demostrar que estos $8,234.06 fueron retenidos por la demandada según él declara. Es verdad que Gandía inició una acción primero contra Stubbe bajo la teoría de que Stubbe había entrado en posesión de este dinero y por tanto lo demandó, según explicó, por daños y perjuicios. Si es un hecho que estos $8,234.06 estaban todavía en poder de la demandada en la fecha de la disolución y la corporación tenía conocimiento por conducto de sus oficiales de los hechos de tal disolución, entonces la compañía sería responsable a Gandía cualesquiera que hubieran sido las manifestaciones casuales o incidentales que Gandía haya hecho ya en las cláusulas de disolución o en su pleito individual contra Stubbe. Gandía nunca podría estar impedido a menos que por algo que hubiese manifestado o realizado hubiera inducido a error a la "Porto Rico Fertilizer Company." Por la demostración *prima facie* que aquí se ha hecho por lo menos los funcionarios de la "Porto Rico Ferti-

lizer Company'' y los miembros de la sociedad de ''Gandía
y Stubbe'' eran en su mayoría los mismos, y el conoci-
miento de la ''Porto Rico Fertilizer Company'' resalta fuer-
temente.  Hubo una demostración bastante fuerte de que Gan-
día era dueño de $8,234.06 de dividendos y que éstos jamás
fueron satisfechos a él o a ''Gandía y Stubbe.''  La contes-
tación niega estos hechos pero esa es una cuestión de defensa.

En tanto en cuanto se trataba de la demandada, los autos
demostraban legalmente que Gandía era el dueño de las 60
acciones, no importa cual fuera el arreglo interior de ''Gan-
día y Stubbe,'' de modo que *prima facie* Gandía tenía de-
recho a cualquier dividendo que fuese declarado sobre estas
acciones, ya fuera la suma de $8,234.06 o menos.  Los socios
deben haber estado hablando de algo cuando dijeron en las
cláusulas de disolución que Gandía traspasaría sus acciones
a Stubbe.  Ahora bien, ya que este traspaso se refiriese a
las 60 acciones o al interés de Gandía en todas las acciones
de ''Gandía y Stubbe'' por igual razón debe declararse a Gan-
día con derecho a los dividendos ya declarados correspon-
dientes a estas acciones y la incongruencia entre la demanda
y la prueba sería inmaterial.  Por tanto, como los $8,234.06
se le abonaron a él al disolverse la sociedad, él parece tener
derecho a esta suma.

No hemos considerado más ampliamente la prueba, por-
que esto en realidad es una cuestión para la corte senten-
ciadora.  Hemos analizado lo suficiente para mostrar que se
presentó un caso *prima facie* y por tanto debe revocarse la
sentencia y devolverse las actuaciones para la celebración de
un nuevo juicio.

> *Revocada la sentencia apelada y ordenada la*
> *celebración de un nuevo juicio.*

Jueces concurrentes: Sres. Presidente Hernández y Aso-
ciados del Toro, Aldrey y Hutchison.