GANDÍA, DEMANDANTE Y APELADO, v. PORTO RICO FERTILIZER
COMPANY, DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan,
Sección Primera, en pleito sobre cobro de dividendos.

No. 2474.—Resuelto en abril 24, 1922.

CORPORACIÓN—ACCIONISTA—PRESUNCIÓN.—Cuando están inscritas originalmente
acciones de una corporación a nombre de un accionista tal hecho establece la
presunción a su favor de ser el verdadero dueño de las mismas.

ID.—ID.—CESIÓN — DIVIDENDOS. — Cuando una corporación funda su derecho en
cierta cláusula de un contrato para negarse a reconocer los supuestos derechos de un accionista por virtud de una cesión de acciones, dicha corporación está obligada por la misma cláusula que fija el derecho a dividendos
vencidos en el mismo accionista.

Resuelto en reconsideración en mayo 22, 1922, y nuevamente en julio 3, 1922.

RECONSIDERACIÓN—AUTOS—APELACIÓN.—A virtud de moción de reconsideración y
en ausencia de alguna circunstancia especial, una parte no tiene derecho a adicional los autos con certificaciones de otro caso y tratar de ventilar nuevas
cuestiones por primera vez en esta corte.

Los hechos están expresados en la opinión.

Abogados de la apelante: Sres. C. Coll Cuchí, G. Cruzado Silva y R. Rivera Zayas.

Abogado del apelado: Sr. José de Guzmán Benítez.

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Para sostener una sentencia a favor del demandante la corte inferior en su opinión declaró probado que el demandante era el dueño de sesenta acciones de la compañía demandada y que dicho demandante tenía derecho a recobrar de la demandada la suma de $8,234.06 por razón de dividendos declarados y no repartidos. Una de las principales alegaciones de la apelante fué que no había conexión íntima entre estas dos declaraciones de la corte y que estos dividen-

dos en manera alguna habían sido asignados a dichas sesenta acciones. La apelante asimismo sostiene que el dominio de dichas sesenta acciones nunca lo tuvo el demandante sino siempre la mercantil Gandía & Stubbe de la cual él era un socio igual. La apelante también alegó la defensa inconsistente de que las sesenta acciones habían sido asignadas por el demandante a Stubbe en la escritura de disolución de Gandía & Stubbe y que por tanto los dividendos habían sido pagados a Stubbe Brothers por razón de la prueba presentada a la demandada tendente a acreditar el dominio de las sesenta acciones en Stubbe Brothers. Se sugiere, además, que la corte cometió error al ordenar a la demandada conservar en su libro de acciones un record de las sesenta acciones a favor del demandante toda vez que la prueba tendió a demostrar el traspaso intermediario de Gandía a Stubbe Brothers, y los reclamantes contrarios de las acciones no fueron hechos partes.

Esta última cuestión en realidad de verdad se trató de promover primero mediante excepción previa. Pero los actos del demandante tendentes a mostrar un traspaso no constaban de la faz de la demanda. En el juicio, sinembargo, la escritura de disolución fué presentada como prueba y en ella aparece que Gandía convino en que ''él venderá sus acciones a Stubbe'' por su valor a la par. Ya convengamos o no con el apelado en cuanto al último verdadero traspaso de las acciones, no debió ordenarse a la compañía demandada llevar un record y declarar definitivamente el dominio en una persona cuando dicha compañía tenía ante sí la prueba al parecer robusta de una reclamación contraria. Es verdad que las acciones nunca fueron cedidas prácticamente ni pagado el valor a la par de las mismas al apelado, pero la apelante sostiene que según el texto de la escritura de disolución las acciones se traspasaban *ipso facto* a Stubbe y quedaba Gandía con una reclamación por su valor a la par; que

el uso del tiempo futuro era común a varias de las cláusulas de disolución en las que surgían derechos en cualesquiera de los socios. Podemos ver cómo es que el apelado podría alegar una falta de causa, que esta parte de la escritura de disolución pudiera ser separable e independiente, y él podría también insistir en que el título quedó en él, pero en este punto antes de obligarse a la compañía no debe quedar sujeta a la posibilidad de un pleito establecido por los reclamantes contrarios. Los cesionarios, lo mismo que lo hizo la compañía, podrían dar una interpretación distinta a la escritura de disolución y la demandada tenía derecho a insistir en que dichos cesionarios tengan su día en corte antes de que pueda hacerse responsable a la compañía por la reclamación adversa del demandante.

Nos inclinamos a convenir con la apelante también en que no hay relación lógica matemática o directa entre las sesenta acciones y el dividendo de $8,234.06. La escritura de disolución demuestra, sin embargo, que cualquiera que fuera el origen de las reclamaciones antes de existir dicha escritura, en ella se hizo una distribución específica de los referidos $8,234.06 a Gandía. La compañía tenía la escritura de disolución ante sí. Confió en ella para decir que las acciones de Gandía habían sido traspasadas a Stubbe, y este conocimiento, independientemente de otras cuestiones, no surgió de una parte remota o indefinida de la escritura de disolución sino de la misma cláusula en la cual la demandada en parte basó su derecho a considerar la suma asignada. La cláusula en cuestión fué la siguiente:

"*Octavo:* Son condiciones especiales convenidas entre los socios para efectuar esta liquidación, las siguientes:—(*a*) El señor Gandía venderá al Sr. Stubbe todas sus acciones en la Porto Rico Fertilizer Company al precio de la par, quedando en favor del Sr. Gandía la mitad de todos los dividendos declarados por dicha compañía.—(*b*) El señor Gandía podrá utilizar hasta el treinta y uno de diciembre de mil novecientos diez y seis la casa conocida con el nombre de fá-

brica de algodón, en Santurce, sin poder dedicarla a otros fines que a los que actualmente tiene, pagando al Sr. Stubbe los alquileres que el Sr. Gandía cobre por dicha casa a J. & P. Coats & Co., Ltd.— (*c*) El saldo que resultare después de la liquidación a favor de cualquiera de los dos socios se pagará por el deudor en documentos negociables de a un mil dollars cada uno, pagaderos a un año plazo de la fecha de esta escritura.—(*d*) El Sr. Gandía quedará con los contratos referentes a las casas y sitios de la antigua firma Gandía & Stubbe sin compensar por ello en forma alguna al socio Sr. Stubbe.''

Que los dividendos de $8,234.06 habían sido declarados anteriormente, no se refuta, ni que fueron declarados en favor de los socios o de cualquiera de ellos. Por tanto la compañía sabía por esta cláusula que no tenía derecho a pagar los dividendos a nadie sino a Gandía, y esto independientemente del hecho de que había otra prueba tendente a establecer la misma conclusión como dedujo la corte inferior.

En tanto esto puede tener alguna relación, estamos convencidos por la prueba, y así lo declaramos, de que hasta la fecha en que se firmó la escritura de disolución dichas sesenta acciones pertenecían a Gandía. Fueron originalmente inscritas a su nombre, cualquiera que fuera la causa u origen de las mismas, y la demandada estaba en la obligación de demostrar que el caso era distinto. Podría militar contra la demandada el hecho de haber alegado ella la defensa inconsistente de que las referidas sesenta acciones fueron traspasadas de Gandía a Stubbe por la escritura de disolución. No pudo haber traspaso alguno sin haber dominio y los autos no acreditan ningunas otras acciones que las partes pudieran haber tenido en mente cuando convinieron en la cláusula octava arriba transcrita. Con la clara presunción del dominio primitivo a su favor, como aparece del libro de acciones, de las cláusulas de incorporación y de la enmienda a éstas, la falta de Gandía en declarar como testigo en su propia defensa no tenía importancia y ésta se compensa por la falta semejante de Stubbe en declarar como testigo. Se

demostró que él estaba íntimamente identificado con la demandada y esta última pudo claramente presentarlo como testigo.

Habiendo llegado a la conclusión, como hemos dicho, de que el dominio anterior de las sesenta acciones no era cuestión de importancia, uno de los puntos en que más se insiste no parece tener gran importancia, pero sin embargo lo consideraremos. Se alegó con insistencia que cuando la "Porto Rico Fertilizer Company" fué formada se celebró un contrato entre Gandía y Stubbe, socios, de una parte, y la "Virginia Carolina Chemical Company" de la otra, por el cual se estipuló o convino en que 250 acciones de la compañía que se formaba las tendría Gandía y Stubbe y otras 250 la compañía de Virginia y que ninguno de ellos debía vender o traspasar sin aviso al otro. La forma del contrato no es incompatible con el dominio de parte de las acciones en Gandía y Stubbe individualmente. La prueba no nos satisface de que las sesenta acciones de Gandía, sesenta de Stubbe y otras cinco acciones de otra persona, fuera una simulación con el objeto único de la incorporación, ni que el origen de estas 125 acciones resultara indirectamente de la venta de una finca en Santurce perteneciente a Gandía & Stubbe. Hubo otro número de 125 acciones pertenecientes a Gandía y Stubbe, que hubiera podido tener su origen por la venta de dicha finca. Gandía y Stubbe convinieron con la "Virginia Carolina Chemical Company" en no vender o traspasar, pero debemos considerar que este es un contrato en el que el objeto es no alterar el *status quo,* por el cual todas las acciones bajo el control de Gandía y Stubbe o cualquiera de ellos debían continuar así. Fuera del hecho de que la corte encontró el documento en forma dudosa, es únicamente una ligera prueba parcial del dominio de las 250 acciones en la mercantil Gandía & Stubbe, y el hecho declaramos que se demostró ser distinto por la prueba a que hacemos referencia, por la existencia de sesenta acciones en poder de Stubbe y por los actos de la compañía

demandada misma reconociendo el dominio en Stubbe Brothers, una entidad distinta de Gandía & Stubbe. A lo sumo sería la "Virginia Carolina Chemical Company" la que podría quejarse, pero claramente no recibió perjuicio alguno, y las partes actuaron dentro del significado de la alegada estipulación o convenio, sin mezclar en él a ningún extraño. La supuesta estipulación era lo que se conoce por un "*pooling arrangement*" por el cual una corporación íntima se levanta y todas las acciones quedan en poder de unas pocas personas. 31 Cyc. 912.

La sentencia apelada debe ser revocada en tanto ordena a la demandada que tenga registradas en sus libros de acciones y de traspasos de acciones las sesenta acciones de la corporación demandada, que considere al demandante como uno de sus accionistas en cuanto se refiere a las sesenta acciones, y que le pague cualesquiera dividendos distribuidos de las ganancias de la corporación demandada; y en todo lo demás debe ser confirmada. Esta confirmación deja subsistente una sentencia contra la demandada por la suma de $8,234.06 y las costas.

*Revocada en parte y en parte confirmada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Aldrey y Hutchison.

El Juez Asociado Sr. Franco Soto no intervino en la vista de este caso.

RESOLUCIÓN SOBRE RECONSIDERACIÓN DE MAYO 22, 1922.

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Al archivarse la sentencia dictada en este caso cada una de las partes ha solicitado su reconsideración. La apelante se opone a la concesión de la suma de $8,234.06 y acompaña certificaciones para acreditar que se está tramitando ejecución por esta misma suma contra Arturo Trias y Johann D. Stubbe en otro pleito que también fué revisado por esta corte.

Asumiendo que estas certificaciones estén debidamente ante nos, somos de opinión de que el hecho de si el demandante puede cobrar dos veces esta misma cantidad a diferentes demandados, o quién es el verdadero demandado contra el cual ha de procederse, son cuestiones que no pueden ser ventiladas en esta forma y por primera vez en esta corte. Estos son puntos que deben levantarse en las alegaciones y prueba en algún pleito, o de otro modo, menos en esta corte. Lo que tenemos ante nuestra consideración son los autos de un caso seguido contra The Porto Rico Fertilizer Company, en los cuales aparece que la referida compañía debía a Gandía la suma reclamada.

En una moción de reconsideración, sin embargo, en ausencia de alguna circunstancia especial que aquí no se ha probado, una parte no tiene derecho a adicionar los autos y especialmente con certificaciones que proceden de otro caso.

El apelante solicita también la reconsideración de la sentencia sobre el punto relativo a las costas, toda vez que nunca negó que se debía a Gandía la suma de $8,234.06 sino que la compañía había traspasado esta cantidad de buena fe a los Sucesores de Stubbe. Los autos tienden a acreditar que no había justificación alguna por parte de la compañía para pagar este dinero a los Sucesores de Stubbe, pero como ordenamos la reconsideración a instancia del apelado, estamos dispuestos a oir ulteriores razonamientos sobre este punto.

El apelado solicita la reconsideración insistiendo en que por el mismo razonamiento por virtud del cual esta corte confirmó la sentencia de $8,234.06 debió haberse dejado intacto un pronunciamiento por el cual de acuerdo con la sentencia de la corte inferior el demandante hubiera tenido derecho a algunos $20,000 adicionales. Según ya leímos la sentencia de esa corte, la parte que se revoca y a la cual alude el apelado, se refería solamente a futuros dividendos. No había pronunciamiento en ella sobre dividendos vencidos, pero estamos dispuestos a oir argumentos sobre este punto.

El caso, por tanto, será nuevamente señalado y las partes podrán informar sobre dos puntos, a saber, la cuestión de costas y de si la sentencia de la corte inferior puede ser interpretada como sostiene el apelado.

> *Reconsiderada la sentencia de 24 de abril de 1922 y señalada una nueva vista para el 5 de junio, 1922.*

Jueces concurrentes: Sres. Presidente del Toro, y Asociados Aldrey, Hutchison y Franco Soto.

RESOLUCIÓN SOBRE RECONSIDERACIÓN DE JULIO 3, 1922.

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Esta fué una vista por virtud de reconsideración solicitada por ambas partes en la apelación. Por nuestra sentencia de abril 24, 1922, revocamos la sentencia de la corte inferior en cuanto por ella se ordenaba a la apelante a reconocer al apelado como dueño de sesenta acciones y a considerar a dicho apelado como uno de los accionistas de la referida corporación, y a pagarle los dividendos que han de repartirse. Entendimos la sentencia de la corte inferior en el sentido de significar que todas estas subsiguientes cosas ordenadas eran consecuencia del dominio de dichas sesenta acciones. El apelado insiste, al parecer, en que el pronunciamiento de la sentencia era que él había de tener futuros dividendos o beneficios por razón de una cláusula adicional en la escritura de disolución de sociedad entre Gandía y Stubbe, por la cual los beneficios no divididos ascendentes a $20,208.80 debían de ser pagados por Stubbe. Pero por las mismas razones que nos negamos a dejar que subsistieran los pronunciamientos de la sentencia en cuanto al dominio de las sesenta acciones y sus consecuencias, nos sentiríamos obligados a hacer la misma declaración respecto a los beneficios que han de ser repartidos. Los dividendos no fueron declarados a la fecha del juicio. La escritura de disolución requería que

Stubbe verificara su pago.   No puede ordenarse a la Porto
Rico Fertilizer Company a pagar futuros dividendos en un
pleito en el cual dicho Stubbe no es parte.

Sin embargo, creemos que la sentencia en su forma es
aplicable solamente a las sesenta acciones.   La propia de-
manda no expresa la cláusula de la escritura de disolución
a que ahora se hace referencia y la súplica de la misma
parece referirse únicamente a dichas sesenta acciones, y esto
después de hacer específica mención de los $8,234.06 que sos-
tuvimos eran pagaderos al apelado.   La sentencia es con-
gruente con la demanda.   En otras palabras, tanto la' de-
manda como la sentencia expresan, primero, la suma espe-
cífica que el apelado tenía derecho a recobrar y todo lo de-
más es una consecuencia aparente de dicho dominio.   A falta
de una referencia más específica en la demanda sobre los di-
videndos que han de ser repartidos en concepto de beneficios
ya obtenidos nos sentimos obligados a resolver que el deman-
dante y apelado renunció a cualquier derecho que tuviera
en esta acción a tales futuros dividendos.

En la vista de este caso la apelante renunció a toda otra
petición con excepción de que la sentencia sea modificada en
cuanto a las costas.   Es perfectamente cierto que la ape-
lante tenía derecho a defenderse toda vez que Stubbe no
había sido hecho parte, pero no encontramos que jamás ad-
mitiera la apelante, como alega, que Gandía tenía derecho
al pago de los $8,234.06.   Teníamos la fuerte impresión de
que la apelante negó toda responsabilidad hacia Gandía, aun-
que el dominio de estos dividendos declarados constaban en
la misma cláusula por la cual la apelante se oponía a la idea
del dominio de las sesenta acciones en Gandía.   No hubo
ofrecimiento de pago o consignación en la corte de dichos
$8,234.06.   Aunque creemos que debe subsistir la sentencia
por costas al fijar la corte inferior los honorarios de abo-
gado debe tomar en consideración que la sentencia ha sido

revocada en parte.  Debe dictarse sentencia en los mismos términos que los de nuestra sentencia de abril 24, 1922.

*Revocada en parte.*

Jueces concurrentes: Sres. Presidente del Toro, y Asociados Aldrey, Hutchison y Franco Soto.