GANDÍA, DEMANDANTE Y APELADO, *v.* PORTO RICO FERTILIZER CO., DEMANDADA Y APELANTE.

No. 2474.—*Visto:* Enero 14, 1924. *Resuelto:* Mayo 9, 1924.

APELACIÓN A LA CORTE DE CIRCUITO—PARTES NECESARIAS—RESOLUCIÓN DE CUESTIONES DE DERECHO POR LA CORTE DE CIRCUITO.—Esta corte se negó a entrar en los méritos de cierta cuestión por entender que no estaban ante ella todas las partes necesarias, y contra esa resolución se estableció apelación para ante la Corte de Circuito de Apelaciones para el Primer Circuito, la cual revocó la sentencia por el fundamento de que estaban ante la corte todas las partes necesarias y devolvió el caso para ulteriores procedimientos no inconsistentes con su opinión. *Se resolvió:* que la Corte de Circuito, al resolver una cuestión de ley, no quiso obligar a la Corte Suprema de Puerto Rico sobre cuestiones de hecho.

COMPRAVENTA—PAGO—ENTREGA DE LA COSA VENDIDA.—Cuando las condiciones de una venta han sido convenidas y el negocio está ultimado y todo lo que el vendedor tiene que hacer con los efectos está terminado, el contrato de venta se convierte en absoluto en cuanto a las partes sin que se verifique el pago o entrega; y cuando el objeto de la venta o propuesta venta es una cosa específica, el título queda traspasado inmediatamente, especialmente cuando el comprador nada tiene que hacer.

SENTENCIA de *Luis Campillo,* J. (San Juan, Sección Primera, declarando con lugar la demanda con las costas al demandado. *Revocada en parte y confirmada en parte.*

C. *Coll y Cuchí,* abogado de la apelante; *J. B. Soto* y *J. Guzmán Benítez,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Este caso viene ante nuestra consideración por virtud del mandato de la Corte de Circuito de Apelaciones en la cual la sentencia de la Corte Suprema de Puerto Rico, en tanto revocó la sentencia de la corte de distrito, fué revocada y el caso devuelto a esta Corte Suprema para ulteriores procedimientos no incompatibles con la opinión de la Corte de Circuito de Apelaciones. Al ser devuelto el caso

oímos primero informalmente a los abogados en Cámara sobre el efecto del mandato y entonces, el día 18 de diciembre señalamos el caso para otra vista en 14 de enero de 1924. En esta vista pública el abogado de Gandía dejó de comparecer y archivó en cambio un escrito que era una protesta contra el acto de considerar esta corte el caso por sus méritos, basada en la teoría, según parece, de que nada quedaba por resolver a esta corte. Gandía, a quien llamaremos ''apelado'', aparentemente temía que podía renunciar a algo compareciendo a esta vista pública y por consiguiente no tuvimos el beneficio de un argumento de él. En el anterior escrito el apelado hacía referencia a la tentativa de la apelante, la Porto Rico Fertilizer Co., para que la Corte de Circuito de Apelaciones revisase su sentencia, pero esta moción para una nueva vista y la actuación de la Corte de Circuito de Apelaciones no están debidamente ante nosotros, y aunque lo estuvieran nos sentiríamos obligados a interpretar la actuación de la Corte de Circuito de Apelaciones como una confirmación de su anterior sentencia y resolución, devolviendo el caso a esta corte para ulteriores procedimientos no incompatibles con la expresada opinión. *Gandía* v. *Porto Rico Fertilizer Co.*, 291 Fed. 18.

Había dos apelaciones ante la Corte de Circuito de Apelaciones—una establecida por cada parte en este litigio. La corte dijo, ''La cuestión que se trata de promover por Gandía en esta apelación es una de derecho, mientras que la que pretende levantar la Fertilizer Co. en su apelación es de hecho.''

La cuestión de hecho promovida por la Porto Rico Fertilizer Co. quedó finalmente resuelta por la sentencia y opinión de la Corte de Circuito de Apelaciones. Es completamente *res adjudicata*. En la apelación de la parte apelada, sin embargo, la corte resolvió expresamente que allí se consideraba una cuestión de derecho y por tanto no estaba considerando los hechos que nosotros mismos habíamos rehusado considerar, o sea, en quien, después de la disolución

de Gandía y Stubbe, estaba investido el título a las sesenta acciones de capital de la Fertilizer Company que el apelado todavía reclama como suyas.

En el curso de la opinión de la Corte de Circuito de Apelaciones se indicó que este tribunal, en tanto revocó la sentencia de la corte de distrito, así lo hizo por el fundamento de que la prueba revelaba que J. D. Stubbe o sus cesionarios eran partes necesarias e indispensables en la acción, y dicha opinión contiene un análisis adicional de la actuación de esta Corte, y al final del párrafo la Corte de Revisión dice ''De modo que la cuestión legal presentada en el caso No. 1594 es si J. D. Stubbe o Stubbe Bros. eran partes necesarias e indispensables en el pleito en tanto concierne la sentencia contra el demandado respecto a las acciones.'' Más adelante la corte de revisión manifestó que esta corte se había negado a considerar la cuestión de si un traspaso bueno y válido se había hecho, por el fundamento de que las partes necesarias en la decisión no estuvieron ante esta corte. Hacia el final de la opinión de la Corte de Circuito de Apelaciones, la corte dice, ''Somos por tanto de opinión de que la Corte Suprema incurrió en error al revocar la sentencia de la corte de distrito basada en el hecho de que J. D. Stubbe, o Stubbe Bros., eran partes necesarias e indispensables en esta acción, y que su sentencia en este particular debe ser revocada y devuelto el caso a esa corte para ulteriores procedimientos no incompatibles con esta opinión.

Es evidente, por tanto, que la única cuestión que la Corte de Circuito de Apelaciones trató de resolver y que dió lugar a la revocación de la sentencia de este tribunal era la misma por la cual revocamos la sentencia de la corte de distrito, o sea, la falta de partes necesarias *vel non.*

En el señalamiento de errores presentado en esta corte por la apelante, Porto Rico Fertilizer Company, dicha apelante alegó como segundo error el siguiente: ''La corte erró al declarar que el demandante y apelado, Pedro Gandía, es dueño de las sesenta acciones de la Porto Rico Fertilizer

Company a que la demanda se contrae.'' La apelante tenía derecho, si todas las partes estaban ante la corte de distrito y la Corte Suprema, como ahora es la ley del caso, a que se resolviera definitivamente este señalamiento de error. Esta corte no hizo tal disposición, y según lo entendemos, no se resolvió en ninguna forma este señalamiento por la Corte de Circuito de Apelaciones.

Es verdad que la Corte de Apelaciones en su opinión se expresa en estos términos: ''Si las partes necesarias para su decisión estuvieron ante ella, la Corte Suprema debió haber resuelto la .cuestión; y parecería, en vista de las pruebas y de los hechos declarados probados por la Corte de Distrito y confirmados por ella que no podía llegarse a ninguna otra conclusión razonable que no fuera que Gandía no traspasó las acciones a Stubbe y que fueron traspasadas por la Fertilizer .Company en sus libros a Stubbe Bros. bien negligente o fraudulentamente.'' La Corte de Circuito de Apelaciones por supuesto, no resolvió que los hechos como fueron declarados probados por la corte de distrito obligan a la Corte Suprema de Puerto Rico o a la Corte de Circuito de Apelaciones, pero la corte sólo estaba manifestando que parecería que los hechos como fueron declarados probados no justificarían ninguna otra conclusión que no fuera que las acciones en cuestión no habían sido traspasadas. La Corte de Circuito de Apelaciones se limitó expresamente a revisar la cuestión sobre la cual revocamos la sentencia de la corte de distrito. Si la idea de la Corte de Revisión fué resolver la cuestión del alegado traspaso y decidir esa cuestión en favor de Gandía, por la confirmación de la sentencia de la corte de distrito se hubiera fácilmente obtenido el resultado. De acuerdo con el mandato, sin embargo, hemos creído que es nuestro deber revisar el referido segundo señalamiento de error, el cual, según lo entendemos, no ha sido revisado por esta corte ni por la Corte de Circuito de Apelaciones. La conclusión de la corte de distrito a la cual la Corte de Circuito de Apelaciones se refiere es la siguiente:

"Que el demandante es dueño de las sesenta acciones de la Porto Rico Fertilizer Co. a que la demanda se contrae, de las que no aparece de la prueba que el Sr. Gandía se haya desprendido en forma alguna, habiendo probado el demandante su derecho de propiedad con el certificado de incorporación y con el de las enmiendas de las cláusulas de incorporación de la demandada, que presentó como evidencia secundaria, por no haber presentado la corporación demandada los títulos originales de dichas acciones a pesar de haber sido requerido oportunamente para ello por esta corte a instancias del demandante.

"La escritura de disolución y liquidación de la mercantil 'Gandía & Stubbe', al estipular que el Sr. Gandía se obliga a vender sus acciones a su socio Sr. Stubbe, al precio de la par, es prueba de que el Sr. Stubbe consideraba como tal dueño al Sr. Gandía, no pudiendo referirse esa promesa de venta a las acciones de la propiedad de la mercantil 'Gandía & Stubbe' que le correspondieran al Sr. Gandía, en su calidad de socio de la casa, pues éstas, según es de verse de la misma escritura, le fueron adjudicadas en su totalidad al Sr. Stubbe, según es de verse del inventario y de la adjudicación. Y consta también probado que Pedro Gandía y Johann D. Stubbe, que formaban la firma social 'Gandía & Stubbe', son las mismas personas que constituían entonces la dirección y gobierno de la Porto Rico Fertilizer Co.; así como también que dicho Johann D. Stubbe controlaba los acuerdos y negocios de la demandada.

"Para contrarrestar la prueba presentada por el demandante, la demandada entre otras pruebas, presentó a la consideración de la corte un convenio celebrado en 20 de junio de 1913, entre la Virginia Carolina Chemical Company, y Gandía & Stubbe, documento que fué objetado por el demandante, por aparecer varias hojas en papel de copia, con diferentes caracteres de maquinilla, una página sin compaginación; debido a tales circunstancias, la corte tiene que acoger ese documento con algún recelo, pero aun dándole todo su valor y armonizándolo con la demás prueba, no vemos cómo ese documento de fecha 20 de julio de 1913, pueda destruir los hechos que figuran en el acta de incorporación suscrita y jurada ocho días más tarde por el demandante, por Johann D. Stubbe y por Hector Cestero y Federico Stubbe, los hechos referidos en las enmiendas a dichas cláusulas de incorporación, suscritas y juradas tres años más tarde, y lo contenido en la escritura de disolución y liquidación de la mercantil 'Gandía & Stubbe,' en cuanto a la materia se refiere. Y con motivo de esas declaraciones juradas de dichos Johann D. Stubbe y Federico Stubbe, no puede la corte dar crédito a las de-

claraciones de estos testigos, ni a la de Arturo Trías que era enton-
ces, según aparece probado, el secretario de la corporación deman-
dada.''

La corte de distrito no trató en su opinión de analizar las cláusulas de disolución. La apelante tiene razón al decir que esta corte asumió que las sesenta acciones de capital habían sido traspasadas de Gandía a Stubbe. Desde luego que esta suposición tendrá que ser considerada como *obiter dictum* toda vez que sólo revocamos a la corte inferior por falta de partes necesarias. Estamos enteramente convencidos, sin embargo, de que por la escritura de disolución las sesenta acciones poseídas por Gandía fueron definitivamente vendidas a Stubbe y que las partes en el contrato intentaron tal venta y por sus actos posteriores demostraron tal intención.

A pesar de la decisión de esta corte y de la de la Corte de Circuito de Apelaciones de que las sesenta acciones de capital hasta la fecha de la disolución pertenecieron a Gandía, la apelante todavía insiste en que las sesenta acciones de capital nunca pertenecieron a Gandía. De su resumen de la prueba sobre este punto estamos satisfechos de que las 125 acciones pertenecientes a la sociedad Gandía & Stubbe, las sesenta acciones pertenecientes a Gandía; las sesenta acciones pertenecientes a Stubbe, y las cinco acciones pertenecientes a otros incorporadores, en conjunto 250 acciones, todas fueron consideradas como un bloque de acciones y todas bajo el control de la sociedad de Gandía y Stubbe como una entidad de conformidad con el arreglo (*pooling arrangement*) hecho con la Virginia Chemical Company a que nos hemos referido en nuestra anterior opinión. *Gandía v. Porto Rico Fertilizer Co.,* 30 D.P.R. 373. Sentadas así las cosas, la cláusula quinta de la escritura de disolución traspasa o fija el título y la posesión de estas 250 acciones a Stubbe. A su cuenta de la Porto Rico Fertilizer Co. se cargan $25,000, que es el dinero equivalente a todas las acciones que tenían bien Gandía o Stubbe o cualquiera

de sus asociados en la Porto Rico Fertilizer Co. indepen-
dientemente de la Virginia Chemical Co.   La expresada cláu-
sula quinta demuestra que a Stubbe se le cargan las accio-
nes de capital en la Porto Rico Fertilizer Co., mientras que
a la cuenta de Gandía no se le cargan ningunas acciones de
la Porto Rico Fertilizer Co.  Los $25,000 comprendían to-
das las 250 acciones de capital de algún modo bajo el con-
trol de Gandía & Stubbe, o cualquiera de ellos y por tanto
en la cláusula 8 encontramos a las partes conviniendo y
vendiendo estas 60 acciones que hasta la fecha de la diso-
lución habían pertenecido a Gandía.

Pero sin esta premisa del resto de los autos, opinamos
que la escritura de disolución por sí sola muestra el tras-
paso.  Si bien es verdad que la cláusula octava del contrato
está redactada en tiempo futuro, así también lo están otras
varias cláusulas de la escritura de disolución.  Era una
forma de tiempo usada para indicar lo que cada una de las
partes haría al firmar el contrato y una de las últimas
cláusulas de la escritura hace esto algo más claro.  Esta
cláusula demuestra que había dividendos no repartidos de-
bido a los beneficios ya acumulados, y luego siguen estas
palabras en español: ''Y por la presente queda especial-
mente convenido que el señor Stubbe pagará al señor Gandía
las cantidades que de esta suma no dividida sean declaradas
de tiempo en tiempo como dividendos de dicha corporación
en la proporción de las acciones que el señor Gandía vende
al señor Stubbe.''  La palabra ''vende'' es el presente de
indicativo del verbo ''vender'' y tiene el mismo significado
que las palabras inglesas ''is selling.''  El idioma español
es rico en subjuntivos y si hubiera habido alguna duda res-
pecto a si Gandía estaba realmente vendiendo a Stubbe, la
forma del tiempo aquí empleada seguramente hubiera sido
''venda.''  El derecho a estas ganancias acumuladas es con-
dicional a la venta consumada de Gandía a Stubbe.

Tenemos muy poca duda de que Gandía insistiría en estos

beneficios por virtud de esta escritura de disolución que él mismo ofreció como prueba en la corte inferior.

Los artículos 1353 y 1354 del Código Civil de Puerto Rico prescriben lo siguiente:

"Artículo 1353.—La venta se perfeccionará entre comprador y vendedor, y será obligatoria para ambos, si hubieren convenido en la cosa objeto del contrato, y en el precio, aunque ni la una ni el otro se haya entregado.

"Artículo 1354.—La promesa de vender o comprar, habiendo conformidad en la cosa y en el precio, dará derecho a los contratantes para reclamar recíprocamente el cumplimiento del contrato.

"Siempre que no pueda cumplirse la promesa de compra y venta, regirá para vendedor y comprador, según los casos, lo dispuesto acerca de las obligaciones y contratos en el presente libro."

Estas conclusiones son harmónicas con el desenvolvimiento de la ley común de Inglaterra como se indica en el caso de *Leonard* v. *Davis*, 1 Black 476, que cuando las condiciones de una venta han sido convenidas y el negocio está ultimado y todo lo que el vendedor tiene que hacer con los efectos está terminado, el contrato de venta se convierte en absoluto en cuanto a las partes sin que se verifique el pago o entrega. Otras autoridades en el mismo sentido general son *Hatch* v. *Oil Co.*, 100 U. S. 131; *Terry* v. *Wheeler*, 25 N. Y. 520; *Van Brooklen* v. *Smeallie*, 140 N. Y., 70, 72; *People* v. *Mills Sing*, 183 Pac. 865, 24 R.C.L. 23.

Se ha resuelto generalmente, además, que cuando el objeto de la venta o propuesta venta es una cosa específica, el título queda traspasado inmediatamente, especialmente cuando el comprador nada tiene que hacer. *Tarling* v. *Baxter*, 23 Eng. Rul. Cases, 257, 23 R.C.L. 1347, y especialmente la nota 8 para demostrar que el tiempo futuro puede significar el tiempo presente.

Sin embargo, si era necesaria alguna ulterior actuación por parte de Gandía para constituir la entrega, la misma demanda de Gandía indica que esto se hizo. El párrafo octavo de dicha demanda es el siguiente:

"Una vez firmada la escritura de disolución de 24 de julio de 1916 y en vista de la promesa de venta de sus acciones que el demandante le hizo en la misma a Johann D. Stubbe, éste al retirarse de la casa llevó consigo los títulos de las sesenta acciones del demandante quien no puso ningún reparo, por la confianza que dicho Stubbe le había merecido siempre, en la persuación el demandante de que el referido Stubbe le pagaría los seis mil dollars que importaban dichas acciones a la par en el acto mismo de que le fuesen transferidas por el demandante, lo que no ha podido éste verificar tanto por tener Stubbe los títulos en su poder cuanto por haberse negado éste a pagarle dicha suma, alegando, según informes que ha tenido el demandante, que las sesenta acciones de que se trata le habían sido adjudicadas en la escritura de disolución para pagar cuentas de 'Gandía & Stubbe.' "

En otras palabras Gandía estuvo presente y permitió que Stubbe tomara posesión de los artículos específicos, objeto de la alegada promesa de venta.   En el juicio también Cayetano Coll Cuchí era un testigo del demandante.   El fué necesariamente garantizado por la parte que le citaba.   El artículo 156 de la Ley de Evidencia prescribe lo siguiente:

"Artículo 156.—A la parte que presentare un testigo no le será permitido tachar su veracidad mediante evidencia de mala reputación; pero podrá contradecirlo con otra evidencia, y asimismo probar que en otras ocasiones hubo de hacer declaraciones incompatibles con su actual testimonio, según lo dispuesto en el artículo ciento cincuenta y nueve."

No se trató de impugnar o atacar la credibilidad de este testigo aunque quizás se pretendió de algún modo demostrar que él estaba equivocado.   El declaró que Gandía le había dicho al pedirle el testigo a Gandía que firmara el traspaso, que él presentaría una reclamación contra Stubbe por el precio de las sesenta acciones, el cual era $6,000, e hizo otras manifestaciones tendentes a demostrar un traspaso.

Gandía no fué a declarar para contradecir de algún modo la declaración de Cayetano Coll Cuchí.   En el curso de nuestra opinión original en este caso, al discutir el pago

de $8,234.06, hemos disculpado a Gandía de la necesidad de ir. a declarar en cuanto a ese dividendo pero no estábamos considerando entonces la posesión o título a estas sesenta acciones de capital. Su omisión a declarar y decir algo acerca de este traspaso es cuestión comprendida en el principio de prueba voluntariamente suprimida especificada en varios artículos de la Ley de Evidencia. Artículo 102, párrafo 5 y 6; artículo 162, último párrafo.

En uno de los períodos preliminares de este litigio, cuando se trató de obtener los libros de la Porto Rico Fertilizer Co., en el procedimiento de *certiorari*, esta corte interpretó la demanda en el sentido de que las sesenta acciones de capital habían sido traspasadas a Stubbe. Esta sentencia fué dictada en el año 1917. *Gandía v. Texidor, Juez de Distrito*, 26 D.P.R. 40. Lo que dijimos fué que el peticionario Gandía había vendido a dicho Stubbe las sesenta acciones que él tenía de la Porto Rico Fertilizer Co.

Este fué un caso en el cual al celebrarse la vista original la Corte de Distrito de San Juan resolvió sobre la moción de *nonsuit* que Gandía no había probado su derecho de propiedad a las sesenta acciones de capital. Esta sentencia la revocamos en apelación. *Gandía v. Porto Rico Fertilizer Co.*, 28 D.P.R. 555. Tememos, como a veces ocurre al revocar, que la Corte de Distrito de San Juan en el próximo juicio se inclinó hacia el otro lado. El examen de todos los autos nos convence de que las sesenta acciones quedaron definitivamente traspasadas a Stubbe .por Gandía y por tanto la sentencia de la corte de distrito *debe ser revocada* en cuanto por ella se ordena a la demandada a mantener en sus libros de acciones y de transferencias de acciones las sesenta acciones de la corporación demandada, y a tener y considerar al demandante como uno de los accionistas por las sesenta acciones mencionadas, y a pagarle los dividendos que hayan de repartirse por razón de los beneficios que tenga la corporación demandada, *y confirmar, como confirma,* la

dicha sentencia en sus demás particulares, incluyendo la condena de costas.

El Juez Asociado Sr. Franco Soto, no intervino en la resolución de este caso.